UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

GEOFFREY HULBURT,

                    Defendant.

REPORT & RECOMMENDATION

07-CR-6080L

---

## PRELIMINARY STATEMENT

By Order of Hon. David G. Larimer, United States District Judge, dated August 24, 2007, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 25).

Defendant Geoffrey Hulburt is charged in a single-count indictment.  The Indictment charges that on December 2, 2005, Hulburt knowingly possessed materials containing images of child pornography that had been transported, and produced using materials that had been transported, by computer in interstate and foreign commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B).  (Docket # 15).  Currently before this Court for Report and Recommendation is Hulburt's motion to suppress evidence.  (Docket # 19).[1]

---

[1] Hulburt's omnibus motions also sought, *inter alia*, discovery and inspection, *Brady* material, *Jencks* material, a *Franks* hearing and rulings on evidentiary matters under Rules 404, 608 and 609 of the Federal Rules of Evidence.  (Docket # 19).  Each of these requests was either resolved by the parties or decided in open court by the undersigned on August 8, 2007.  (Docket ## 23, 24).

**FACTUAL BACKGROUND**

On December 2, 2005, officers with the New York State Police executed a search warrant for Hulburt's residence at 612 West Church Street, Apartment A, in the City of Elmira, New York.  The warrant also authorized a search of Hulburt's person and his car, a green 2005 Dodge Stratus.  This Court has reviewed a copy of the search warrant issued by Chemung County Court Judge Thomas E. Ramich, as well as the supporting affidavit of New York State Police Investigator Michael E. Myers.  (Affidavit of Michael E. Myers, sworn to on December 2, 2005 ("Myers Aff.")).

Myers's affidavit provided the following factual recitation:

> An investigation has revealed that Geoffrey S. Hulburt has been in contact with Michael Roberts via his home computer for an extended period of time.  The nature of this contact has been instant messaging and email correspondence over the internet with the content being sexual in nature a large part of the time. Specifically, Mr. Hulburt has requested and urged Michael Roberts to contact a sixteen year old male, [John Doe],[2] and ascertain whether [Doe] would be interested in becoming involved in sexual contact with him.  During the correspondence, Hulburt has made sure that [Doe] has been made aware of these requests and wants to know what the response from [Doe] was.  Additionally, Hulburt has described sexual acts to Roberts and described what he would like to do to the sixteen year old [John Doe].  Hulburt is a school teacher in the Waverly Central School District and he has described in the instant messaging how he has seen [John Doe] in school and he is attracted to him.  Hulburt has used his home computer to make these communications to further the possible sexual encounter with the sixteen year old victim.  Hulburt has also requested photos of [Doe] and Roberts and has said that he has photos of himself and a friend that he will share.  Edward Kelly, Private Investigator, has met and interviewed Michael Roberts and

---

[2] The affidavit identifies the alleged victim by name.  Because he is a minor, the victim's name is not disclosed herein; rather, he is referred to as "John Doe."

2

obtained a written statement from Roberts. A copy of this statement is attached to this search warrant application.

Copies of printouts of the instant messaging that took place on 11/27/05 between Michael Roberts and Geoffrey Hulburt have been turned over by Michael Roberts. The contents of the instant messaging corroborates that Hulburt has been in contact with Michael Roberts and he is making attempts to pursue sexual encounters with [John Doe], 16 years old. Copies of these computer instant messages are attached to this search warrant application.

Private Investigator, Edward Kelly, has also told me that he has interviewed [John Doe], 16 years old. [Doe] stated that he has been told by Michael Roberts that a teacher by the name of Geoffrey Hulburt thinks he is "hot" and he would like to perform sexual acts on him.

Additional interviews have not been conducted by the police with these subjects in the interest of protecting the privacy of this investigation at this point.

(Myers Aff., ¶ 3).

The search warrant issued by Judge Ramich authorized a search of Hulburt's

residence, vehicle and person for the following:

Any personal computers including all related accessories such as but not limited to: towers, monitors, printers, cameras, laptop computers.

Any disks, CD Roms or other computer related material[.]

Any documents, receipts or any other papers associated with computer files such as instant messaging, emails or other types of correspondence via electronic means.

Any photographs either professionally completed or printed off the internet or a computer.

Any digital cameras or traditional cameras – any film or memory disks or chips associated with cameras.

> Any documents containing names, addresses, phone numbers of
> persons or businesses.

(Search Warrant Issued on December 2, 2005 ("Search Warrant")).

Officers with the New York State Police executed the warrant on December 2, 2005 and seized Hulburt's computer.  He was thereafter charged with endangering the welfare of a child, a felony under New York State law, and pled guilty on June 6, 2006.  Two weeks later, on June 20, 2006, agents with the Federal Bureau of Investigation reviewed the contents of Hulburt's seized computer, and, on June 29, 2006, Hulburt was charged in a federal criminal complaint with knowingly possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  (*See* Docket # 1).

## REPORT AND RECOMMENDATION

Hulburt moves to suppress the images seized from his computer on two grounds. First, Hulburt alleges that the search warrant for his residence was unsupported by probable cause.  Second, Hulburt argues that even if the warrant was valid, the searching officers exceeded its scope by searching image files located on his computer.  (Docket # 19).  For the following reasons, I recommend that Hulburt's motion to suppress be denied.

## I.  Probable Cause

The Fourth Amendment to the Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ."  U.S. Const. amend. IV; *see also* Fed. R. Crim. P. 41.  In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court

affirmed the "totality of the circumstances" test to determine whether a search warrant satisfies the Fourth Amendment's probable cause requirement.  According to the Court, the issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* at 238; *see United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983) ("To establish probable cause to search a residence, two factual showings are necessary – first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence").

An issuing court's finding of probable cause is not to be reviewed *de novo*; rather, such a finding is entitled to "substantial deference."  *Id.*; *see United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (reviewing court's obligation is merely to determine that the issuing judge had a "'substantial basis for...conclud[ing]' that probable cause existed") (quoting *Illinois v. Gates*, 462 U.S. at 238-39) (internal quotation omitted).  Indeed, the Second Circuit has observed that the execution of a search warrant that was based upon an issuing court's finding of probable cause "will be upheld by a reviewing court on less persuasive evidence than would have justified a police officer acting on his own."  *United States v. Travisano*, 724 F.2d at 345.  This is particularly true in close cases, which should be determined by the preference to be afforded to warrants.  *United States v. Smith*, 9 F.3d at 1012 (citing *Jones v. United States*, 362 U.S. 257, 270 (1960)).

Investigator Myers made clear in his affidavit that his belief that probable cause existed to search Hulburt's residence was based upon information provided to him by a private

investigator, as well as copies of internet communications between Hulburt and a young man

who was a student at the high school in which Hulburt taught.  The affidavit disclosed the names

of both the private investigator (Edward Kelly) and the student with whom Hulburt had been

communicating over the internet (Michael Roberts).  According to Myers, the investigator

reported that he had interviewed Roberts and that Roberts had revealed that he had been

contacted by Hulburt over the internet.  During a series of Internet Messaging ("IM")

communications between the two, Hulburt requested that Roberts contact John Doe, a sixteen-

year-old student at Hulburt's school, to ascertain whether Doe would be interested in engaging in

sexual conduct with Hulburt.  Hulburt described to Roberts sexual acts that he would like to

engage in with Doe.  Hulburt also asked Roberts for photographs of Doe and him and offered

photographs of himself in exchange.  (Myers Aff., ¶ 3).

　　　　　In his supporting affidavit, Myers submitted a copy of the statement allegedly

made by Roberts to the investigator.  The statement explains that Roberts first reported his

communications with Hulburt to school principals on November 28, 2005, the day after the

second of the two IM communications described below.  Roberts advised that he was motivated

to report the communications out of concern for Doe and other even younger students whom

Hulburt taught.  (Myers Aff.).

　　　　　Myers's affidavit also included copies of two IM communications between

Hulburt and Roberts that had been "turned over" by Roberts, presumably to the private

investigator.[3]  (Id.).  The communications corroborate the information provided by Roberts to the

------

[3]  The transcripts reflect communications between two participants, one using the screen name, "Impaled Scarecrow," the other using the screen name, "Ithaca Grad Guy."  In his statement to the private investigator, Roberts identified the first name as belonging to him and the second as belonging to Hulburt.  (Myers Aff.).

investigator.  For example, the first communication concerns Hulburt's request to Roberts to send photographs of himself and Doe; Hulburt states that he "would be happy to send some nudes" in return.  In the second communication, Hulburt discusses the possibility of engaging in oral sex with Doe, as well as a sexual encounter with Roberts, Doe and Hulburt's boyfriend. (*Id.*).

Finally, Myers's affidavit reveals that the investigator also interviewed Doe. During the interview, Doe stated that he had been told by Roberts that Hulburt thought he (Doe) was "hot" and wanted to engaged in sexual activity with him.  (*Id.*).  Again the IM communications attached to Myers's affidavit apparently corroborate Doe's statements.  In the first IM communication, Hulburt states to Roberts that Doe is "pretty hot."  In the second communication, Roberts reports that he advised Doe that "someone wanted him."  (Myers Aff.).

Taken together, the information provided to Myers from the private investigator concerning his interviews of Roberts and Doe, coupled with the IM communications between Hulburt and Roberts, provided probable cause to believe that evidence of child endangerment would be found at Hulburt's residence.  Although the reliability of Roberts's statement is plainly central to such a determination, I find that a sufficient basis existed upon which to conclude that his information was credible.  First, the fact that he identified himself to the school district when reporting his concerns about Hulburt, rather than doing so anonymously, is a factor worthy of consideration and one that weighs in favor of crediting his information.  *See*, *e.g.*, *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (distinguishing between anonymous tip and tip from "known informant whose reputation can be assessed and who can be held responsible if her allegations turned out to be fabricated"); *United States v. Colon*, 111 F. Supp. 2d 439, 442 (S.D.N.Y. 2000) (information

provided during 9-1-1 call was sufficient to establish reasonable suspicion for traffic stop

because caller provided personal information "which on the face of it, indicates that she

believe[d] she was identifiable to the police" and "subjected herself to the risks of adverse

consequences in the event that the tip proved to be false"), *vacated on other grounds*, 250 F.3d

130 (2d Cir. 2001).  Second, Roberts's information was corroborated by the alleged victim, who

confirmed that he had been told by Roberts that Hulburt thought he was "hot" and was interested

in sexual activity with the victim.  Third, his information was consistent with printouts of internet

instant messaging communications with Hulburt.  Although the possibility of fabrication by

Roberts cannot be entirely discounted, it seems less probable than not considering that Roberts

identified himself when making such serious allegations, conveyed consistent accounts of what

had happened to the principals and the private investigator and provided documentary evidence

of a nature that lent itself to further investigation (for example, by investigating whether evidence

of the communications existed on Hulburt's computer).  In addition, the record suggests no

motive for Roberts to make false criminal accusations against Hulburt.  *See United States v.*

*Rollins*, 522 F.2d 160, 164 (2d Cir. 1975) (upholding search warrant based upon information

provided "not [by] an anonymous paid informer, but [by] an identified bystander with no

apparent motive to falsify"), *cert. denied*, 424 U.S. 918 (1976).  For these reasons, I recommend

denial of Hulburt's motion to suppress on the grounds that probable cause for the warrant was

lacking.

I also reject the argument that a *Franks* hearing is warranted to explore the basis

for Myers's belief that Roberts was credible.  The warrant explains the reasons why Myers

concluded that probable cause for the search existed, and Hulburt has adduced no facts to suggest

that Myers's reliance upon the information provided to him by the private investigator was

reckless.

Even if probable cause was wanting, nothing in the record suggests that the

searching officers did not rely upon the warrant in good faith.  In *United States v. Leon*, 468 U.S.

897 (1984), the Supreme Court held that the Fourth Amendment exclusionary rule should not be

applied to evidence obtained by a police officer whose reliance on a search warrant issued by a

neutral magistrate was based on "objective good faith," even though the warrant itself might

ultimately be found to be defective.  *Id.* at 918-23; *United States v. Salameh*, 152 F.3d 88, 114

(2d Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999); *United States v. Benedict*, 104 F. Supp. 2d

175, 182 (W.D.N.Y. 2000).  The rationale underlying this good-faith exception is that the

exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable

law enforcement activity."  *United States v. Leon*, 468 U.S. at 919.

The Court in *Leon* identified four situations in which the good faith exception is

inapplicable.  Specifically, an executing officer's reliance on a search warrant will not be deemed

to have been in good faith:

> (1) where the issuing magistrate had been knowingly misled;
>
> (2) where the issuing magistrate wholly abandoned his or her
>      judicial role;
>
> (3) where the application is so lacking in indicia of probable cause
>      as to render reliance upon it unreasonable; and
>
> (4) where the warrant is so facially deficient that reliance upon it is
>      unreasonable.

*Id.* at 923.  *See United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (citations omitted).

No evidence has been presented to suggest that Myers knowingly misled Judge Ramich or that the judge wholly abandoned his role as a judicial officer.  Moreover, Myers's affidavit clearly explained his belief that evidence of the crime of endangering the welfare of a child would be located at Hulburt's residence and on his computer.  In addition, for the reasons discussed above, it simply cannot be said that the search warrant was so lacking in probable cause or facially deficient as to render the executing officer's reliance upon it unreasonable. Accordingly, even if the search warrant issued by Judge Ramich was not supported by probable cause, Hulburt's motion to suppress the evidence should also be denied under the *Leon* good-faith exception.

## II.  Scope of the Search Warrant

The Fourth Amendment further requires that the warrant "particularly describ[e] the place to be searched, and the person or things to be seized."  U.S. Const. amend. IV; *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).  The particularity requirement is designed to prevent general searches.  "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."  *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  The particularity requirement is satisfied only by a specific description of the place to be searched and the items to be seized – a description that must be contained in the warrant itself, not merely in the supporting affidavit.  *Groh v. Ramirez*, 540 U.S. 551, 557 (2004)

(citing *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984) (warrant that does not satisfy the particularity requirement is unconstitutional)).

The purpose of the particularity requirement is to "guard against general searches that leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized." *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990) (citing *Andresen v. Maryland*, 427 U.S. 463, 480 (1976); *Marron v. United States*, 275 U.S. 192, 196 (1927)). The particularity requirement need not, however, eliminate all discretion on the part of the executing officers. *United States v. Riley*, 906 F.2d at 844; *United States v. Longo*, 70 F. Supp. 2d 225, 250 (W.D.N.Y. 1999). "Once a category of seizable papers has been adequately described, with a description delineated in part by an illustrative list of seizable items, the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment." *Riley*, 906 F.2d at 844.

In the case at bar, Hulburt argues that the searching officers exceeded the scope of the warrant's search authorization. Hulburt concedes that the warrant authorized a search of his computer for text files, such as IM communications and emails, but argues that it did not authorize a search for image files. According to Hulburt, because "[n]either the application nor warrant made any reference to images stored on the computer, any reasonable executing agent should have known that the warrant did not authorize their seizure." (Docket # 19). Hulburt thus claims that the seizure of images from his computer hard drive was beyond the scope of the search warrant and must be suppressed. (Docket # 19).

The search warrant issued by Judge Ramich authorized the search for and seizure of "any photographs either professionally completed or printed off the internet or computer."

11

Hulburt argues that the language "professionally completed" limited the searching officers to photographs that were professionally manufactured or developed.  I agree.  I disagree, however, with his further contention that the term "professionally completed" refers only to photographs in hard copy form.  Photographs may be professionally developed and provided to the customer in digital form, through the internet or on a compact disk.  Those images may then be stored on the customer's computer.  In view of current-day photographic technology, the challenged language, "any photographs . . . professionally completed" should not be read to refer only to photographs developed in hard copy.

In addition, Hulburt's argument ignores the language of the warrant authorizing a search and seizure of "any personal computers including all related accessories such as but not limited to: towers, monitors, printers, cameras, laptop computers."  That language itself permits the search and seizure of Hulburt's computer, including any material found therein, including image files.

In sum, I find that the officers were authorized to search for and seize professionally completed images, whether they were located on Hulburt's computer or in hard copy.[4]  Accordingly, I reject Hulburt's contention that the officers exceeded the scope of the search warrant, and I therefore recommend denial of his suppression motion on this basis as well.

---

[4]  I do not reach the government's argument that even if the warrant did not authorize a search for image files, the images would have been discovered in "plain view" by the officers during their text file search.  The record contains insufficient competent evidence about the officers' search methodology to determine whether the images would have been inevitably discovered during the course of a text search.

## **<u>CONCLUSION</u>**

For the foregoing reasons, it is my recommendation that Hulburt's motion to suppress images seized from his computer **(Docket # 19)** be **DENIED**.


*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
September  10  , 2007

13

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **<u>Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.</u>**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       September __10__, 2007

---

[5] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).